UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID POWELL,

       Petitioner,

Case No. 05-70594

Honorable Patrick J. Duggan

v.

ANDREW JACKSON,

       Respondent.

_____/

## OPINION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 12, 2007.

PRESENT:  THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

David Powell ("Petitioner"), a state inmate currently incarcerated at the Mound Correctional Facility in Detroit, Michigan, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his state conviction and sentence for possession with intent to deliver over 650 grams of cocaine in violation of MICH. COMP. LAWS § 333.7401(2)(a).  Petitioner asserts that his Fourteenth Amendment right to equal protection was violated when the prosecutor used peremptory challenges to exclude potential jurors on the basis of race.

Petitioner was tried before a jury in Wayne County Circuit Court, the Honorable

Mary Waterstone, presiding. On October 4, 2001, he was sentenced to life imprisonment for possession with intent to deliver cocaine.

Subsequently, Petitioner filed a direct appeal with the Michigan Court of Appeals. On September 23, 2003, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *People v. Powell*, No. 239288, 2003 WL 22204738 (Mich. Ct. App. Sept. 23, 2003). Petitioner then filed his application for leave to appeal with the Michigan Supreme Court, raising the same claims as raised in the Michigan Court of Appeals. On February 27, 2004, the Michigan Supreme Court denied leave to appeal. *People v. Powell*, 469 Mich. 1016, 677 N.W.2d 27 (2004). On February 14, 2005, Petitioner filed the pending petition for a writ of habeas corpus presenting the following issue:

> Was the issue of the prosecution's purposeful racial discrimination in the exercise of its peremptory challenges incorrectly decided by the Michigan Courts for the decisions were contrary to and an unreasonable application of the decision in *Batson v. Kentucky*?

(Petitioner's Br. at v).[1]

## II. **Factual Background**[2]

Jury selection in this case began on September 11, 2001. During voir dire, the

---

[1] One of the issues raised by Petitioner before the Michigan Court of Appeals was the "*Batson*" issue, which is the only issue raised in his habeas petition.

[2] A recitation of the facts giving rise to the Petitioner's arrest and those introduced at trial is unnecessary for the purposes of this Opinion and Order. These facts can be found in the Michigan Court of Appeals' Opinion. *People v. Powell*, No. 239288, 2003 WL 22204738 (Mich. Ct. App. Sept. 23, 2003).

prosecutor, using her first three peremptory challenges, excused three African-American jurors. (Tr. II at 101,110,117).[3] Defense counsel objected to the prosecutor's third peremptory challenge based on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986) and asked for a bench conference without the presence of the jury. The trial court complied.

Defense counsel argued that the use of the prosecutor's third peremptory challenge in dismissing another African-American from the jury venire demonstrated purposeful discrimination by the prosecutor. He argued that it was the prosecutor's intent to obtain a predominately all-white jury. The following colloquy occurred after defense counsel made his arguments:

> Ms. Kettler[4]: It's certainly not my endeavor to get an all-white jury. I'm interested in striking Ms. Wyatt because she indicates some pretty serious bias against the police.
>
> Mr. Pitts[5]: I think she indicated whatever biases she may have, that she could set those things aside, whatever she had.
>
> The Court: She told me she could set it aside and be fair.
>
> Ms. Kettler: Well, your Honor–

---

[3]"Tr." refers to the trial transcript which consists of six separately paginated volumes (I-VI). Volume II, which consists of the transcribed jury selection process occurring on September 12, 2001, is all that is referred to for the purposes of the issues raised in this petition.

[4]Ms. Kettler tried the case as the prosecutor in the Wayne County Circuit Court.

[5]Mr. Pitts served as defense counsel during the trial in the Wayne County Circuit Court.

> The Court:   But that just excuses a cause.  I don't recall what her particular issues were.  Her brother had an experience with domestic violence and he hadn't been fairly treated by the police.
>
> So I guess, *although I am somewhat concerned about the issue of race by Mr. Pitts*, it does appear to the Court that, because she does have issues as to how her brother was treated by the police, *at this point I am somewhat concerned*, but I can't at this point say that the peremptory is being used unfairly.

(*Id.* at 119) (emphasis added.).  Defense counsel continued to argue that the prosecutor's reason for excusing the third African-American juror was purposeful discrimination.  The Court responded by saying:

> The Court:   You did and it just seems to me that there is a basis for this that is based on the lady's statements about, it wasn't good enough to excuse her for cause, but I think it's enough that a peremptory is allowable on that issue.
>
> So I'm going to deny any motion and we'll go ahead for peremptory.

(*Id.* at 121).  The defense then moved for a mistrial, which was denied.  In denying the motion the trial judge stated: "I'm going to deny your motion.  I think we still have a jury with several blacks on it and I will hold judgment, but at this point I don't see a need for a mistrial and I'll deny the motion."  (*Id.*).

4

After allowing the prosecutor to use the peremptory, voir dire continued. A jury was eventually empaneled and a trial was held. The jury ultimately found Petitioner guilty as charged and he was sentenced to life imprisonment.

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 495 (1976)).

Under the "unreasonable application" clause, a federal court may grant habeas relief

"'if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts' of the petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35 (2003)(quoting *Williams*, 529 U.S. at 407-08, 120 S. Ct. at 1520). Relief is also available under this clause if the state court decision "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S. Ct. at 1520; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535 (citations omitted); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

Finally, in analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the "holdings, as opposed to dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S.Ct. 1166, 1172 (2003)(quoting *Williams*, 326 U.S. at 412, 120 S. Ct. at 1523).

### IV. Applicable Law and Analysis

It is clearly established that the use of peremptory challenges to excuse prospective

jurors "solely on account of [the juror's] race" offends the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 88-89, 106 S. Ct. 1712, 1719 (1986). In *Batson*, the Supreme Court set forth a three-step analysis that is to be applied in determining whether a peremptory challenge is unconstitutional. First, the defendant must demonstrate a prima facie case of discrimination. *Id.* at 93-94, 106 S. Ct. at 1721. This requires a showing that the defendant "is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Id.* at 96, 106 S. Ct. at 1723. "[T]he defendant is entitled to rely on the fact . . . that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S. Ct. 891, 892 (1953)). "Ultimately, the defendant, relying on this presumption and other facts, must 'raise an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race.'" *Lancaster v. Adams*, 324 F.3d 423, 431 (6th Cir. 2003)(quoting *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723)(alterations in original).

"Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question." *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1866 (1991)(citing *Batson*, 476 U.S. at 96-97, 106 S. Ct. at 1723-24). "Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 111 S. Ct. at 1866. Indeed, the proffered reasons "need not be persuasive nor

plausible" so long as they are neutral.  *United States v. Copeland*, 321 F.3d 582, 599-600 (6th Cir. 2003) (amended opinion).

"Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination."  *Hernandez*, 500 U.S. at 359, 111 S. Ct. at 1866 (citing *Batson*, 476 U.S. at 97-98, 106 S. Ct. at 1724).  The burden of persuasion always rests on the party opposing the strike.  *Batson*, 476 U.S. at 93, 106 S. Ct. at 1721; *Copeland*, 321 F.3d at 599.  "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal . . . ."  *Hernandez*, 500 U.S. at 364, 111 S. Ct. at 1868.

In his memorandum in support of his petition for writ of habeas corpus, Petitioner asserts that after the prosecutor exercised her first three peremptory challenges to excuse three black jurors, "[d]efense counsel objected to the prosecutor 'endeavoring to peremptory [sic] challenge a third black juror' and cited the Court to *Batson* and argued that it was the prosecutor's intent to obtain a predominately all-white jury."  (Mem. at 6)(quoting Tr II. at 117).  In response to the defense's objection, the prosecutor specifically set forth her reason for using her third peremptory challenge to excuse a prospective juror, Ms. Wyatt, by stating: "I'm interested in striking Ms. Wyatt because she indicates some pretty serious bias against police."  (Tr. II at 119).  In rejecting the Petitioner's challenge, the trial judge stated that "[i]t just seems to me that there is a basis for this [prosecutor's peremptory challenge] that is based on [Ms. Wyatt]'s statements about, it wasn't good enough to excuse her for cause but I think it is enough that a

peremptory is allowable on the issue."[6] (*Id.* at 121).

Because the prosecutor articulated a race-neutral explanation for striking the juror, it was Petitioner's burden to prove that the prosecutor's motive for excusing the juror was the result of "purposeful discrimination." *Batson*, 476 U.S. at 93, 106 S. Ct. at 1721. It is clear, that in rejecting the Petitioner's *Batson* challenge, the trial court was not satisfied that the exercise of the peremptory challenge was based on "purposeful discrimination." While recognizing that the prospective juror's statement with respect to what the prosecutor termed bias would not have been sufficient to excuse the prospective juror for cause, the trial judge stated that "I think it is enough that a peremptory is allowable on that issue."[7] (Tr. II at 121). Consequently, in this Court's opinion, the trial court's decision to allow the peremptory challenge and deny the Petitioner's "*Batson* objection" was not a decision "that was contrary to, or involved an unreasonable application of" the Supreme Court's decision in *Batson*. 28 U.S.C. § 2254(d)(1).

Furthermore, this Court does not believe that the Michigan Court of Appeals' decision affirming the trial court's denial of the *Batson* challenge was "objectively unreasonable." *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535 (citations omitted). Although the Court of Appeals concluded that Petitioner failed to establish a prima facie case of

---

[6]The Court had previously acknowledged that Ms. Wyatt had indicated that "[h]er brother had an experience with domestic violence and he hadn't been fairly treated by the police." (Tr. II at 119).

[7]Prior to allowing the peremptory challenge, the Court said "because [Ms. Wyatt] does have issues as to how her brother was treated by the police, at this point, I am somewhat concerned, but I can't at this point say that the peremptory is being used unfairly." (*Id.*).

discrimination under *Batson*, it also stated that the prosecutor "offered an unrebutted, nondiscriminatory basis" for using the peremptory challenge. *People v. Powell*, No. 239288, 2003 WL 22204738, at *3 (Mich. Ct. App. Sept. 23, 2003). Consequently, the Court of Appeals recognized, albeit implicitly, that Petitioner failed to satisfy his burden of proving "purposeful discrimination."[8]

In conclusion, this Court does not believe that by relying on the prosecutor's race-neutral basis for exercising a peremptory challenge, the Michigan courts rendered decisions contrary to, or an unreasonably applied, *Batson*. Therefore, the petition for habeas corpus must be denied.

A Judgment consistent with this Opinion and dismissing the petition for writ of habeas corpus shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Carolyn A. Blanchard, Esq.
Debra M. Gagliardi, Esq.

---

[8]Petitioner argues that because the Michigan Court of Appeals rejected his *Batson* argument solely due to his failure to establish a prima facie case of discrimination, it was an unreasonable application of *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859 (1991). In *Hernandez*, the Supreme Court stated that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Id.* at 359, 111 S. Ct. at 1866. However, this Court believes that the Court of Appeals also rested its decision on the race-neutral explanation offered by the prosecutor. *See People v. Powell*, No. 239288, 2003 WL 22204738, at *3 (Mich. Ct. App. Sept. 23, 2003).